UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| THE MEDICAL PROTECTIVE COMPANY, | : : : |
| Plaintiff, | : Case No. 3:24-cv-292 : : |
| v. | : Judge Thomas M. Rose : : Magistrate Judge Caroline H. Gentry |
| DONALD ALEXANDER GRONBECK, *et al.*, | : : : |
| Defendants. | |

**ENTRY AND ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION OF DEFENDANT DONALD ALEXANDER GRONBECK TO PARTIALLY DISMISS PLAINTIFF'S COMPLAINT (DOC. NO. 35)**

Currently before the Court is the Motion of Defendant Donald Alexander Gronbeck to Partially Dismiss Plaintiff's Complaint (the "Motion") (Doc. No. 35).  Plaintiff The Medical Protective Company ("MedPro") has filed its Complaint for Recission and Declaratory Judgment (the "Complaint") (Doc. No. 1), whereby MedPro seeks to rescind professional services insurance policies issued to Defendants Donald Alexander Gronbeck ("Gronbeck") and Yellow Springs Primary Care, Inc. ("Yellow Springs"), due to allegedly material misrepresentations made pertaining to Gronbeck's sexual misconduct toward patients between 2013 and 2021.  (*Id.* at PageID 6-13.)  The Complaint would also have the Court declare that MedPro has no duty to defend Gronbeck and Yellow Springs under the policies, against several suits now pending in the Montgomery and Greene Counties Court of Common Pleas.  (*Id.* at PageID 13-16.)

Gronbeck Moves for partial dismissal of the Complaint, arguing that MedPro has failed to satisfy the general tender-back rule applicable to recission claims (Doc. No. 35 at PageID 262),

1

and, because Gronbeck's sexual misconduct is alleged to have occurred in the course of providing medical services, MedPro cannot claim that it has no duty to defend Gronbeck for lack of coverage (*Id.* at PageID 271-74). For the reasons discussed below, the Court **GRANTS**, **IN PART**, and **DENIES**, **IN PART**, the Motion of Defendant Donald Alexander Gronbeck to Partially Dismiss Plaintiff's Complaint (Doc. No. 35).

**I.     BACKGROUND**

As stated at the outset, this matter concerns professional services insurance policies issued by MedPro to Gronbeck—formerly Dr. Gronbeck—and Yellow Springs. After receiving his application for coverage, MedPro issued Gronbeck a professional services policy on March 31, 2014, which was renewed annually until April 7, 2022 (the "Gronbeck Policy"). (Doc. No. 1 at PageID 6, 8.) By February of 2019, Gronbeck acquired another professional services policy from MedPro on behalf of Yellow Springs, a primary care provider, in his capacity as sole shareholder thereof (the "Yellow Springs Policy"). (*Id.*) Once approved in 2019, the Yellow Springs Policy was renewed each year until coverage ended on April 7, 2022, much like the Gronbeck Policy. (*Id.* at PageID 10.)

In 2022, Gronbeck began facing accusations of sexual misconduct for acts allegedly committed upon his patients during medical examinations from 2013 through 2021. (*Id.* at PageID 11-12.) For clarity, although MedPro alleges that Gronbeck was aware of similar accusations as early as March 2018 (*Id.* at PageID 12), no formal action was taken against Gronbeck until 2022. In January of 2022, the State Medical Board of Ohio suspended Gronbeck's license to practice medicine after initially investigating him for sexual misconduct. (*Id.* at PageID 11.) Within the following two months, Gronbeck voluntarily surrendered his medical license, in lieu of involuntary revocation. (*Id.* at PageID 12.) On October 20, 2022, Gronbeck was charged in the Greene County

Court of Common Pleas with 50 criminal counts, alleging rape, sexual battery, gross sexual imposition, and/or sexual imposition. (GREENE COUNTY COURT OF COMMON PLEAS, COURTVIEW, https://courts.greenecountyohio.gov/eservices/search.page.7?x=*xhM3ZGOnG4EzNuSfVvC4Q (last visited Apr. 10, 2025).)[1]

In addition to the criminal charges against him, Gronbeck is now a defendant in four civil cases pending in the Greene County Court of Common Pleas and one civil case pending in the Montgomery County Court of Common Pleas. (Doc. No. 1 at PageID 13-14.) The first of these suits was filed in August 2022, even before Gronbeck was indicted. (MONTGOMERY COUNTY COURT OF COMMON PLEAS, PROV3, https://pro.mcohio.org/ (last visited Apr. 10, 2025).) In any event, the plaintiffs in Gronbeck's civil suits are 21 of his former patients—all of whom have been named as defendants in the present action based on their interest in the outcome of this litigation. (Doc. No. 1 at PageID 4-5.) Moreover, each complaint in these underlying suits accuses Gronbeck of committing sexual torts in the course—or under the guise—of performing medical examinations. (GREENE COUNTY COURT OF COMMON PLEAS, COURTVIEW, https://courts.greenecountyohio.gov/eservices/search.page.7?x=*xhM3ZGOnG4EzNuSfVvC4Q (last visited Apr. 10, 2025); *see also* MONTGOMERY COUNTY COURT OF COMMON PLEAS, PROV3, https://pro.mcohio.org/ (last visited Apr. 10, 2025).) Thus far, MedPro has provided defenses for Gronbeck and Yellow Springs in state court. (Doc. No. 1 at PageID 15.)

When applying for the Gronbeck Policy, Gronbeck faced the following pertinent inquiries:

Have you ever been indicted for, charged with, or convicted of, any act committed in violation of any law or ordinance other than traffic offenses or had your hospital privileges, DEA license, Medical license or reimbursement privileges refused, denied, revoked, suspended, restricted, subject to a reprimand, placed on probation or voluntarily surrendered?[; and,]

---

[1] The Court has accessed this and other state court records for purposes of the instant Motion because (a) the documents constitute publicly available records, and, (b) the documents are integral to the allegations contained in MedPro's Complaint.

3

>Have you ever been accused of sexual misconduct of any kind?

(*Id.* at PageID 6.)  Gronbeck answered, "no," to both questions and agreed to notify MedPro of any material changes to any answer provided in his application.  (*Id.*)  Gronbeck never notified MedPro of such changes or altered his application responses when renewing the Gronbeck Policy each year.  (*Id.*)

Similarly, the Yellow Springs Policy application asked whether Yellow Springs or its employees had:

>Ever been the subject of disciplinary investigative proceedings or a reprimand by a governmental licensure board or administrative agency, hospital or professional association?[; or,]
>
>Ever been indicted for, charged with, or convicted of, any act committed in violation of any law or ordinance, other than traffic offenses, or had hospital privileges, DEA license, medical license, or Medicaid/Medicare privileges revoked, suspended, restricted, subject to a reprimand, placed on probation or voluntarily surrendered?

(*Id.* at PageID 7.)  Gronbeck responded to both of these questions in the negative and agreed to inform MedPro of any material changes to Yellow Springs' answers.  (*Id.* at PageID 10-11.)  Gronbeck did not ever notify MedPro of any such changes and did not amend Yellow Springs' application responses upon renewal of the Yellow Springs Policy each year.  (*Id.* at PageID 6.)

Notably, both the Gronbeck Policy and the Yellow Springs Policy (collectively, the "Policies") provide that MedPro will defend the insureds against claims alleging a criminal act, a willful tort, or a sexual act, so long as coverage otherwise exists under the Policies.  (*See id.* at PageID 14-15.)  Regarding coverage, both Policies offer coverage for claims based on professional services rendered, including:

>(a) the rendering of medical, surgical, dental, or nursing services to a patient and the provision of medical examinations, opinions, or consultations regarding a person's medical condition within the Insured's practice as a

>licensed health care provider. This shall include first aid rendered at the scene of an accident without expectations of monetary compensation.

(*Id.* at PageID 14.)

Notwithstanding, on November 2, 2024, MedPro filed the Complaint in this matter. (*See* Doc. No. 1.) Therein, MedPro alleges that Gronbeck made material misrepresentations regarding his sexual misconduct when applying for and renewing the Policies, which warrants the equitable remedy of recission. (*Id.* at PageID 6-13.) MedPro further asserts, in relevant part, that it has no duty to defend Gronbeck or Yellow Springs because the sexual misconduct alleged in the state courts was committed outside the scope of Gronbeck's professional services and, therefore, Gronbeck's purported conduct is not covered under the Policies. (*Id.* at PageID 14.)

On January 27, 2025, Gronbeck filed his current Motion. (Doc. No. 35.) MedPro filed its response in opposition to the Motion on February 17, 2025 (Doc. No. 38), and Gronbeck submitted his reply brief in support of his Motion on March 3, 2025 (Doc. No. 39). No other briefings have been lodged by Yellow Springs or the defendants in interest. Accordingly, Gronbeck's Motion is ripe for review and decision.

## II.     STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (citing *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard is not the same as a probability standard, but "asks

5

for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks omitted). Thus, if a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party. *Id.* at 554-55. However, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id*. at 555-56. "In evaluating a motion to dismiss [a court] may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (internal quotation marks omitted).

Finally, "[a] federal court sitting in diversity must apply the substantive law . . . of the state in which it sits." *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (citing *Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021-22 (1941)); *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir. 1981). To the extent that the state's highest court has not addressed the issue presented, the federal court must anticipate how the state's highest court would rule. *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)). Moreover, "[i]f the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it." *Clutter*, 646 F.2d at 1153.

6

### III. ANALYSIS

Initially, the Court finds it useful to state the lens through which it must read the subject Policies here. In Ohio, "[i]t is a long-standing principle of law that an insurance policy is a contract, and that the relationship between the insurer and the insured is purely contractual in nature." *Nationwide Mut. Ins. Co. v. Marsh*, 472 N.E.2d 1061, 1062 (Ohio 1984) (citing *Ohio Farmers Ins. Co. v. Cochran*, 135 N.E. 537 (Ohio 1922)). Courts interpret insurance contracts by "reasonably construing" the agreement based on the "ordinary and commonly understood meaning of the language employed." *Reinbolt v. Gloor*, 767 N.E.2d 1187, 1200 (Ohio Ct. App. 2001) (internal citations and quotation marks omitted). As with all contracts, a reviewing court cannot read alternative meaning into unambiguous terms of an insurance agreement. *Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1348 (Ohio 1982); *see also Zinser v. Auto-Owners Ins. Co.*, 2017-Ohio-5668, at ¶ 13 (Ohio Ct. App. 2017) ("[a]n insurance policy is a contract; therefore, a reviewing court must interpret it in accordance with the rules of construction applicable to all other contracts"). Though, if the terms of an insurance agreement are "susceptible to more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Reinbolt*, 767 N.E.2d at 1200 (quoting *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988)).

Against this backdrop, the Court considers the viability of: (1) MedPro's claim for recission of the Policies; and, (2) MedPro's plea for a declaratory judgment finding that it has no duty to defend Gronbeck pursuant to the Policies.

#### 1. Recission – Tender Back

The Court turns then to MedPro's claim for the equitable remedy of recission. In his Motion, Gronbeck argues that MedPro's recission claim cannot stand because MedPro has not tendered back the consideration paid for the Policies or alleged it is willing and able to do so. (Doc.

7

No. 35 at PageID 268.)  In response, MedPro states that Gronbeck has misconstrued its Complaint as seeking an equitable remedy requiring the return of consideration, rather than a declaratory judgment action to void the subject Policies, which does not.  (Doc. No. 38 at PageID 284.)  This notion can be dismissed out of hand, as MedPro is the master of its own Complaint, and, the Complaint does in fact include a standalone claim for recission.  (Doc. No. 1 at PageID 6.)  However, more substantively, MedPro contends that its current defense of Gronbeck in the state courts renders a tender-back of consideration received for the Policies impossible.  (Doc. No. 38 at PageID 285-86.)

As a rule, when a party seeks recission of a contract, they must return the consideration received from the contract. *Barnes v. Reserve Energy Exploration*, 68 N.E.3d 133, 138 (Ohio Ct. App. 2016).  "[M]onies need not have actually been returned prior to raising the claim for recission of the contract," but a party seeking recission must make "some statement offering return to [the] status quo …." *Id.*  To this end, Ohio courts have long held that it would run afoul of equitable principles to grant recission to a plaintiff, "and at the same time leave her in possession of that which she received."  *Barnes*, 68 N.E.3d at 138 (quoting *Miller v. Bieghler*, 174 N.E. 774, 776 (Ohio 1931)) (internal quotation marks omitted).

"An exception to the requirement of restoration has been carved out if what plaintiff has received is of no value to him," or if a return of consideration is impossible.  *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F. Supp. 49, 68 (S.D. Ohio 1986) (citing *Taft v. Wildman*, 15 Ohio 123, 128 (Ohio 1846); *Delta Investing Corp. v. Moore*, 366 F.2d 516, 520 (6th Cir. 1966)).  Still, exceptions to the general rule are "to be applied in accordance with equitable principles."  *Delta Investing Corp.*, 366 F.2d at 520 (citing 17A C.J.S. Contracts § 439).  This means that a failure to tender back consideration will be appropriately excused "where such return is rendered impossible

8

by the party whose conduct affords ground for recission." *Delta Investing Corp.*, 366 F.2d at 521 (quoting 12 Am. Jur. § 453, p. 1035) (internal quotation marks omitted). By any token, "Ohio courts have recognized that with respect to the tender-back rule, timing is critical." *Talmer Bank and Trust v. Malek*, 651 F. App'x. 438, 444 (6th Cir. 2016) (citation omitted).

In the case at bar, the Court finds that MedPro's claim for recission must be dismissed for failure to adhere to the general rule in favor of restoration. To start, MedPro has simply not tendered back consideration it received for the Policies it now seeks to rescind, nor has MedPro stated a willingness to return such consideration.

What's more, MedPro cannot plausibly state that the consideration it received for the Policies is valueless or that restoration is impossible here. There is no dispute that the insurance payments MedPro received from Gronbeck year after year were valuable when paid. Rather, MedPro would deem those payments to be valueless now that it has expended resources defending Gronbeck in state court. To the extent Gronbeck's payments are actually valueless to MedPro, those payments are valueless because of MedPro. MedPro learned of the alleged cause for recission of the Policies in 2022, and, instead of filing its claim for rescission then, MedPro would seem to have defended Gronbeck without complaint for more than two years. As a result, MedPro exhausted the value of Gronbeck's consideration of its own volition, as opposed to having the payments rendered valueless by virtue of Gronbeck's alleged misrepresentations. The same can be said for the contention that restoration is impossible. Gronbeck's allegedly fraudulent conduct did not cause MedPro mount his defense in state court and make restoration impossible. Assuming the allegation that Gronbeck made a fraudulent misrepresentation regarding his sexual misconduct to be true, that misrepresentation is made readily apparent by the state court complaints. Again, instead of filing the current action when Gronbeck was served with a complaint in 2022, MedPro

9

made the decision to defend Gronbeck in multiple actions, nonetheless.

In total, MedPro has not satisfied the general tender-back requirement and any circumstances which might give way to an exception are of MedPro's own making. Consequently, the Court **GRANTS** Gronbeck's Motion in this respect and **DISMISSES** MedPro's claim for the equitable remedy of recission.

### 2. Duty to Defend – Coverage

Next, the Court considers whether MedPro has adequately stated a claim for declaratory judgment inasmuch as MedPro alleges that it has no duty to defend Gronbeck under the terms of the Policies. Specifically, Gronbeck takes issue with MedPro's assertion that the Policies do not provide coverage for the alleged acts giving rise to the suits against him in state court. (Doc. No. 35 at PageID 271-72.) Gronbeck contends that, because the Complaint alleges Gronbeck's sexual misconduct was committed during medical examinations, any liability flowing from that conduct is necessarily covered as professional services rendered. (*Id.* at PageID 273-74.) For its part, MedPro retorts that, even acknowledging Gronbeck's alleged sexual misconduct was committed during examinations, professional services simply do not include the acts of rape, sexual battery, and sexual imposition. (Doc. No. 38 at PageID 288.)

"Under Ohio law, 'whether an insurer has a duty to defend an action against an insured is initially determined by the scope of the pleadings'" levied against the insured. *NCMIC Ins. Co. v. Smith*, 389 F. Supp. 3d 535, 540 (S.D. Ohio 2019) (quoting *M/G Transp. Servs., Inc. v. Water Quality Ins. Syndicate*, 234 F.3d 974, 977 (6th Cir. 2000)). Along those lines, "[t]he duty of the insurer to accept the defense of a claim attaches whenever the complaint states a covered claim, or *potentially or arguably* does so." *M/G Transp. Servs., Inc.*, 234 F.3d at 977 (citing *City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 558 (Ohio 1984)) (*emphasis in original*). Where a complaint against an insured alleges no claim which possibly falls within the insured's

policy, an insurer will have no duty to defend. *Wedge Prods., Inc. v. Hartford Equity Sales Co.*, 509 N.E.2d 74, 76 (Ohio 1987) (citations omitted). "However, once a court determines the insurer must defend against one claim within a complaint, 'it must defend the entire lawsuit, even though other claims may not come within the coverage of the policy.'" *NCMIC Ins. Co*, 389 F. Supp. 3d at 540 (quoting *Holloway Sportswear, Inc. v. Transp. Ins. Co.*, 177 F. Supp. 2d 764, 769 (S.D. Ohio 2001)).

Here, the Court finds MedPro's claim decrying a duty to defend Gronbeck for lack of coverage to be entirely plausible. In essence, MedPro's duty to defend Gronbeck, or lack thereof, will turn on whether the state court suits implicate the appropriate standard of care. *See Nye v. Ellis*, 2010-Ohio-1462, at ¶ 33 (Ohio Ct. App. 2010) ("It is well settled in Ohio that in order to prevail in a medical malpractice claim, a plaintiff must demonstrate … the treatment provided did not meet the prevailing standard of care") (citation omitted). The state court complaints certainly allude to Gronbeck's alleged sexual conduct in a way that refers to his medical services rendered. Yet, the underlying complaints do not necessarily sound in medical malpractice. Instead, the main thrust of each suit is made up of allegations of Gronbeck's allegedly intentional sexual impropriety. That the allegedly tortious conduct occurred during medical examinations does not mean that all of Gronbeck's actions were subject to the standard of care. For instance, if during a medical examination, Gronbeck had pulled out a gun and shot the patient, he would have been performing an act far outside the scope of his role as a physician. Gronbeck's alleged sexual misconduct could likewise fall outside this scope, depending on the surrounding factual circumstances.

In short, there is not enough factual context to say that MedPro does or does not have a definitive duty to defend Gronbeck. The Court has looked to the underlying state court documents to inform this analysis, but would refrain from making a conclusive finding based on them. To do

so without context from the Parties would be speculative.

Ultimately, the Court is just left with MedPro's plausible claim. MedPro has alleged that Gronbeck's alleged misconduct falls outside the bounds of professional services, as defined by the Policies, and at this stage MedPro's allegations must be believed. (Doc. No. 1 at PageID 15.) Therefore, the Court **DENIES** Gronbeck's Motion regarding MedPro's claim that the Policies at issue do not cover a duty to defend Gronbeck in state court actions against him.

## IV. CONCLUSION

For the reasons explained herein, the Court **GRANTS**, **IN PART**, and **DENIES**, **IN PART**, the Motion of Defendant Donald Alexander Gronbeck to Partially Dismiss Plaintiff's Complaint (Doc. No. 35). The Court specifically finds as follows:

1. Gronbeck's Motion is **GRANTED** with respect to MedPro's recission claim. Accordingly, Count One of MedPro's Complaint is hereby **DISMISSED**;

2. Gronbeck's Motion is **DENIED** to the extent he argues MedPro cannot state a claim that it does not have a duty to defend Gronbeck for lack of coverage under the Policies; and,

3. This Order is not dispositive of the entire action and this matter shall remain active on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, April 15, 2025.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE