**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

|  |  |  |
|---|---|---|
| THE MEDICAL PROTECTIVE COMPANY, | : | |
| | : | |
| | : | Case No. 3:24-cv-292 |
| Plaintiff, | : | |
| | : | Judge Thomas M. Rose |
| v. | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| DONALD ALEXANDER GRONBECK, *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | | |

---

**ENTRY AND ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION FOR JUDGMENT ON THE PLEADINGS AS TO DONALD ALEXANDER GRONBECK (DOC. NO. 79); DENYING MOTION FOR DEFAULT JUDGMENT AS TO ALL DEFAULTING DEFENDANTS (DOC. NO. 75); AND, ISSUING DECLARATORY JUDGMENT**

---

This matter comes before the Court on two purportedly dispositive motions filed by Plaintiff The Medical Protective Company ("MedPro"). MedPro has brought an Amended Complaint for Declaratory Judgment ("Amended Complaint") (Doc. No. 57) against Defendants Donald Alexander Gronbeck ("Gronbeck"), Yellow Springs Primary Care, Inc. ("Yellow Springs"), and a host of individuals who claim to be victims of sexual assault by Gronbeck, to wit: Elizabeth Brewington, Maria Bright, Matthew Byington, Christy Combs, Dakota Joy, Denise Law, Lisa Marietta, Corey Messer, Nickie Nickels, Lydia Pritchard, Mileah Roper, Jacqueline Louise Hobbs, Danyelle Everage, Michelle Fout, Erin Murphy, and Jessica Robbins (collectively, the "Victim Defendants"). Broadly speaking, MedPro, as the insurer to Gronbeck and Yellow Springs, seeks the Court's declaration that MedPro has no duty to defend or indemnify either Gronbeck or Yellow Springs in state court civil proceedings initiated against the two by the Victim

1

Defendants.  (*See* Doc. No. 5.)  Now, MedPro has filed its Motion for Default Judgment as to all Defaulting Defendants ("Default Motion") (Doc. No. 75) and its Motion for Judgment on the Pleadings as to Donald Alexander Gronbeck ("JOP Motion") (Doc. No. 79) (together, the "Motions").

For the reasons explained in greater detail below, the Court **GRANTS**, **IN PART**, and **DENIES**, **IN PART**, MedPro's JOP Motion and **DENIES** MedPro's Default Motion.

I.      **BACKGROUND**[1]

This case concerns professional services insurance policies issued by MedPro to Gronbeck—formerly Dr. Gronbeck—and Yellow Springs.  After receiving his application for coverage, MedPro issued Gronbeck a professional services policy on April 7, 2014, which was renewed annually until April 7, 2022 (the "Gronbeck Policy").  (Doc. No. 57 at PageID 1717-18.)  In March of 2019, Gronbeck acquired another professional services policy from MedPro on behalf of Yellow Springs, a primary care provider, in his capacity as sole shareholder thereof (the "Yellow Springs Policy").  (*Id.* at PageID 1720-21.)  Once approved in 2019, the Yellow Springs Policy was renewed each year until coverage ended on April 7, 2022, much like the Gronbeck Policy. (*Id.*)

Both the Gronbeck Policy and the Yellow Springs Policy (collectively, the "Policies") offer

---

[1] At the outset, the Court hereby takes judicial notice of both the state court criminal proceedings and civil pleadings against Gronbeck and Yellow Springs—which may be located at GREENE COUNTY COURT OF COMMON PLEAS, COURTVIEW, https://courts.greenecountyohio.gov/eservices/search.page.7?x=*xhM3ZGOnG4EzNuSfVvC4Q (last visited June 2, 2026).  The Court finds such information to be integral to MedPro's Amended Complaint, if not attached thereto, and necessary to the disposition of MedPro's claims.

Rather than repeat the same lengthy citation for each reference to the state court records, the Court instead utilizes a shorthand.  In the context of Gronbeck's criminal proceedings, the Court will refer to documents in the following manner: (Case No. 2025 CR 72, Crim. Judgment Entry at Page 1).  In referring to pending civil actions against Gronbeck and Yellow Springs, the Court will refer to the pleadings by stating the name of the lead plaintiff, followed by the title of the referenced document and the page number of that document, which, by way of example, will read as follows: (Everage Complaint at Page 1).

insurance for claims based on professional services rendered, or professional services which should have been rendered, and define professional services as:

> (a) the rendering of medical, surgical, dental, or nursing services to a patient and the provision of medical examinations, opinions, or consultations regarding a person's medical condition within the Insured's practice as a licensed health care provider. This shall include first aid rendered at the scene of an accident without expectations of monetary compensation.

> (b) the credentialing of a health care provider, including the review of the provider's fitness and qualification to provide health care services by a professional review board or committee through formally adopted, written procedures.

(*See id.* at PageID 1719-22.)  Coverage notwithstanding though, the Policies do explicitly state that MedPro will not cover the "payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act."  (*See* Doc. No. 57-6 at PageID 1851; *see also* Doc. No. 57-14 at PageID 2186.)

In 2022, Gronbeck began facing accusations of sexual assault for acts allegedly done unto his patients during medical examinations from 2013 through 2021.  (*See* Case No. 2022 CR 464, Crim. Indictment.)  For clarity, although MedPro alleges that certain Victim Defendants reported Gronbeck to the local authorities as early as 2021 (*see* Doc. No. 57 at PageID 1710), no formal action was taken against Gronbeck until 2022.  On October 20, 2022, Gronbeck was charged in the Greene County Court of Common Pleas with 50 criminal counts, alleging rape, sexual battery, gross sexual imposition, and/or sexual imposition.  (Case No. 2022 CR 464, Crim. Indictment.)  On February 13, 2025, Gronbeck pled no contest to thirteen counts of gross patient neglect and one count of attempted patient abuse.  (Case No. 2025 CR 72, Plea Agreement; *see also* Case No. 2025 CR 73, Plea Agreement.)  The same day, the state court sentenced Gronbeck for his crimes and entered judgment reflecting as much.  (Case No. 2025 CR 72, Crim. Judgment Entry (Community Control) at Page 1.)

3

Additionally, as pertinent to MedPro's Amended Complaint, Gronbeck and Yellow Springs are now the defendants in three civil actions brought in the Greene County Court of Common Pleas by the Victim Defendants. (Doc. No. 57 at PageID 1709-17.) In each such case, the Victim Defendants are pursuing relief for various sexual assaults that Gronbeck perpetrated upon them while they treated at Yellow Springs as patients. (*Id.*) To-date, MedPro is representing Gronbeck and Yellow Springs in these underlying actions pursuant to the Policies and subject to a complete reservation of rights. (*Id.* at PageID 1722.)

On January 9, 2023, Jacqueline Louise Hobbs filed a complaint against Gronbeck and Yellow Springs, stating claims[2] for assault and battery, intentional infliction of emotional distress, negligent hiring, negligent credentialing, complicity to commit assault, and complicity to commit battery (the "Hobbs Complaint" or, in context, the "Hobbs Action"). (Hobbs Complaint at Page 1-10.) The Hobbs Complaint specifically avers that "Gronbeck encouraged Hobbs to follow up with him at [Yellow Springs]," and, once she did, she alleges that "Gronbeck, over the course of his treatment of Hobbs, prescribed opiates, oxycodone, envivance, and [a]dderall to her, often in amounts exceeding safe levels." (*Id.* at Page 3.) Ms. Hobbs claims that she treated with Gronbeck as an outpatient for a number of years and, "[b]efore, during, and after examinations, Gronbeck violated [her] sexually." (*Id.* at Page 4.) For example, Ms. Hobbs alleges that "when Hobbs' lymph nodes in her neck were inflamed, Gronbeck required [her] to take off her pants so he could feel near her vagina, allegedly checking other lymph nodes." (*Id.*) These acts, Ms. Hobbs submits, constitute assault by Gronbeck and negligence by Yellow Springs. (*Id.* at Page 5-6, 7-9.)

On January 18, 2024, Elizabeth Brewington, Maria Bright, Matthew Byington, Christy

---

[2] The Court uses the phrase, "stating claims," in a colloquial sense. The Court takes no position whatsoever on whether any of the Victim Defendants have stated meritorious claims capable of withstanding a dispositive motion, as such a determination is squarely within the purview of the Greene County Court of Common Pleas.

Combs, Dakota Joy, Denise Law, Lisa Marietta, Corey Messer, Nickie Nickels, Lydia Pritchard, and Mileah Roper brought suit against Gronbeck and Yellow Springs, alleging negligence, negligent hiring and supervision, assault and battery, and intentional infliction of emotional distress (the "Brewington Complaint" or, in context, the "Brewington Action").  (Brewington Complaint at Page 1-32.)  Likewise, on January 18, 2024, Danyelle Everage, Michelle Fout, Erin Murphy, and Jessica Robbins filed a complaint against Gronbeck and Yellow Springs, claiming negligence, negligent hiring and supervision, assault and battery, and intentional infliction of emotional distress (the "Everage Complaint" or, in context, the "Everage Action").  (Everage Complaint at Page 1-20.)  The Brewington Complaint and the Everage Complaint allege that Gronbeck assaulted the Victim Defendants "during medical examinations at [Yellow Springs]." (Brewington Complaint at Page 7; Everage Complaint at Page 5.)  Similarly, both the Brewington Complaint and the Everage Complaint claim that Gronbeck and Yellow Springs negligently failed "to establish policies and procedures that were adequate to protect the health, safety, and welfare of … patients," such as providing for the supervision of Gronbeck when conducting medical examinations. (Brewington Complaint at Page 27-28; Everage Complaint at Page 13.)  As a result, the plaintiffs in both actions (Victim Defendants here) were sexually assaulted.  (Brewington Complaint at Page 29; Everage Complaint at Page 14.)

After nearly two years representing Gronbeck and Yellow Springs in state court, MedPro instituted the current action on November 2, 2024.  (Doc. No. 1.)  Following a bit of motion practice, MedPro subsequently filed its Amended Complaint on November 13, 2025.  (Doc. No. 57.)  Therein, MedPro alleges that it has no duty to defend or indemnify either Gronbeck or Yellow Springs in the underlying state court cases pursuant to the Policies, despite having defended both up to this point in time.  (*Id.* at PageID 1723-34.)  Gronbeck and Defendant Jacqueline Louis

Hobbs then submitted their answers to the Amended Complaint November 26, 2025, and February 23, 2026, respectively.  (Doc. Nos. 61 & 71.)  On the other hand, neither Yellow Springs nor the remaining Victim Defendants have timely responded to MedPro's Amended Complaint.[3]

In that vein, MedPro obtained a Clerk's Entry of Default (Doc. Nos. 69 & 70) and proceeded to file the instant Default Motion as to Yellow Springs and the defaulting Victim Defendants on March 17, 2026.  (Doc. No. 75.)  Gronbeck responded on March 27, 2026 (Doc. No. 76), and all of the Victim Defendants, save for Ms. Hobbs, responded to the Default Motion on March 31, 2026 (Doc. No. 78).  MedPro filed its final reply in support of its Default Motion on April 14, 2026 (Doc. No. 82).  MedPro's Default Motion is ripe for review and decision at this time.

Meanwhile, MedPro submitted its JOP Motion as to Gronbeck on April 2, 2026.  (Doc. No. 79.)  With the exception of Yellow Springs, all Defendants, be they in default or not, timely responded to the JOP Motion (Doc. Nos. 83, 84, 85), and MedPro filed its final reply in support of said Motion on May 7, 2026 (Doc. No. 87).  Thus, MedPro's JOP Motion is now likewise ripe for review and decision.

## II.  STANDARDS OF REVIEW

### 1.  Fed. R. Civ. P. 12(c)

Motions for judgment on the pleadings pursuant to Fed. R. Civ. P 12(c) are reviewed under the same standard as motions to dismiss for failure to state a claim per Rule 12(b)(6).  *See Warrior Sports, Inc. v. Nat'l. Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010).  When considering a motion for judgment on the pleadings, "[a]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the

---

[3] The remaining Victim Defendants filed an answer out of time and the Court has since set aside the Clerk's Entry of Default (Doc. No. 70) against them.  (*See* Doc. No. 89.)

moving party is nevertheless clearly entitled to judgment as a matter of law." *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017) (internal quotation marks omitted). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Case Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007).

"To survive a Rule 12(c) motion, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Hindel*, 875 F.3d at 346-47 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (internal quotation marks omitted)). "[T]he plaintiff must provide the grounds for its entitlement to relief, and that 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal citation omitted). "A plaintiff falls short if [the plaintiff] pleads facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678-79); *see also Twombly*, 550 U.S. at 557 (a complaint will not withstand a motion to dismiss if it offers only "naked assertion[s]" without "further factual enhancement").

In reviewing motions for judgment on the pleadings, courts primarily consider the pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits. *See* Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 7(a) (defining "pleadings" to include both the complaint and the answer); Fed. R. Civ P. 10(c) (stating that "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). Though the allegations

contained in the complaint are the primary focus, courts may also account for "matters of public record, orders, [and] items appearing in the record of the case." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).  Additionally, courts may consider exhibits attached to a motion for judgment on the pleadings "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dept. of Human Servs.*, 901 F.3d 656, 695 (6th Cir. 2018).

When deciding on a matter of law, "[a] federal court sitting in diversity must apply the substantive law . . . of the state in which it sits." *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (citing *Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496, (1941)); *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir. 1981).  To the extent that the state's highest court has not addressed the issue presented, the federal court must anticipate how the state's highest court would rule. *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)).  "If the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it." *Clutter*, 646 F.2d at 1153.

### 2. <u>**Default Judgment**</u>

Federal Rule of Civil Procedure 55 provides for default judgments.  To obtain a default judgment against a party pursuant to Rule 55, there first must be an entry of default regarding that party.  Fed. R. Civ. P. 55(a), (b); *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986) ("[E]ntry of default is … the first procedural step on the road to obtaining a default judgment").  Next, the party seeking the default judgment must apply for one, either to the clerk (if the claim is for a sum certain or a sum that can be made certain by computation) or to the court (in all other cases).  Fed. R. Civ. P. 55(b).

To enter a default judgment against a party, a court must have both subject matter jurisdiction over the action and personal jurisdiction over that party. *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case"); *Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010) ("Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of the default judgment"); *Kuhlman v. McDonnell*, No. 1:20-cv-510, 2022 WL 407240, at *2 (S.D. Ohio Feb. 10, 2022). Additionally, the Court must be satisfied that the facts in the complaint state a claim for relief against that party. *Harrison v. Bailey*, No. 95-6263, 107 F.3d 870 (Table), 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997) ("Default judgments would not have been proper due to the failure to state a claim against these defendants"); *Anderson v. Johnson*, No. 98-1931, 194 F.3d 1311 (Table), 1999 WL 1023753, at *2 (6th Cir. Nov. 4, 1999) ("Even if a default has been entered against a party, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law"); *Parallax Advanced Research Corp. v. SPG Institute, Inc.*, No. 3:21-cv-133, 2021 WL 3634739, at *2 (S.D. Ohio Aug. 17, 2021) ("[A] default judgment fails as a matter of law if the plaintiff's complaint does not assert a plausible claim upon which relief can be granted"). Once a default has been entered, the factual allegations in the complaint—other than those relating to the amount of damages—are accepted as true. *Parallax Advanced Research Corp.*, 2021 WL 3634739, at *2 (citing Fed. R. Civ. P. 8(b)(6); *Stooksbury v. Ross*, 528 F. App'x 547, 551 (6th Cir. 2013)).

Under Rule 55(b)(2), the Court may enter default judgment without a hearing, but it also may conduct a hearing or make a referral when "it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegations by evidence; or (D)

9

investigate any other matter."  Fed. R. Civ. P. 55(b)(2).  Finally, the Sixth Circuit has explained that, "[w]hen considering whether to enter a default judgment, a court should take into account: 1) possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits."  *Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002).

### III.  ANALYSIS

As a preliminary matter to these analyses, the Court must ensure that it has both personal jurisdiction over the named Defendants and subject matter jurisdiction over the entire case. Regarding the former, the court is satisfied that it possesses personal jurisdiction over the named Defendants.  Each of the named Defendants is a resident of the State of Ohio.  "It is axiomatic that Ohio courts can exercise jurisdiction over a person who is a resident of Ohio."  *Prouse, Dash & Crouch, L.L.P. v. DiMarco*, 876 N.E.2d 1226, 1228 (Ohio 2007).  As such, the Defendants are subject to the Court's general jurisdiction.

The Court likewise finds that it has subject matter jurisdiction over the present action under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, but the Court's decision to exercise that jurisdiction here requires some explanation.  Generally, "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration …."  28 U.S.C. § 2201(a).  The use of the word, "may," in the Declaratory Judgment Act imbues courts with "a power permissive," and "the granting of a declaratory judgment rests in the sound discretion of the court."  *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984) (citation and internal quotation marks omitted).

Still, "'[i]n this circuit, a district court's discretion is not unfettered ….'"  *W. Bend Mut.*

10

*Ins. Co. v. Nat. Remedies Massage, LLC*, No. 2:22-cv-3578, 2023 WL 5748789, at *4 (S.D. Ohio Sept. 6, 2023) (quoting *U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x. 562, 563 (6th Cir. 2006)). The Sixth Circuit has instructed courts confronted with whether to exercise jurisdiction under the Declaratory Judgment Act to consider five factors:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

*Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004) (quoting *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

To the extent that these factors are applicable to MedPro's plea for declaratory relief, the Court finds that said factors weigh in favor of exercising jurisdiction. First, a declaratory judgment in this case will settle the controversy, as a declaratory judgment can define MedPro's duties, or lack thereof, to defend or indemnify Gronbeck and Yellow Springs in state court. Second, a declaratory judgment will clarify the legal relations at issue. In particular, MedPro will know its duties, Gronbeck and Yellow Springs will know whether they can continue to expect MedPro to provide for their defense, and the Victim Defendants will gain a clearer picture of the parties who are adverse to them in the court of common pleas. Third, there is no evidence of procedural fencing here and the Court will not presume there is. Fourth, a declaratory judgment is unlikely to cause friction between the federal and state courts. As discussed in greater detail below, MedPro's duties to Gronbeck and Yellow Springs can be ascertained from the Policies and the face of the pleadings in both this case and the underlying state court cases brought by the Victim Defendants. It is

11

unnecessary to wade into the merits of the Victim Defendants' allegations. And, fifth, while it is possible that MedPro could seek the same relief in state court, there is nothing about MedPro's claims which inherently makes them best suited for a state forum. Rather, the conclusions reached with this Order rely upon established Ohio law that this Court is more than capable of applying. Therefore, the Court finds that it may appropriately exercise its jurisdiction pursuant to the Declaratory Judgment Act in this matter and elects to do so.

Jurisdiction being established, MedPro's Motions boil down to an argument that it has neither a duty to defend nor indemnify either Gronbeck or Yellow Springs for the Victim Defendants' claims relating to Gronbeck's sexual misdeeds. The Court considers the nature of MedPro's duties under the Policies, accordingly.

### 1. **Duty to Defend**

The Court first turns its attention to MedPro's duty to defend in the underlying state court actions at issue. On this front, MedPro argues that the sexual acts committed by Gronbeck do not qualify as "professional services" under the Policies. (Doc. No. 75-2 at PageID 2483-87; Doc. No. 79-2 at PageID 2547-54, 2559-60.) To make this argument, MedPro largely relies on authority from other jurisdictions to define the term, "professional services." (*See* Doc. No. 75-2 at PageID 2483-84; *see also* Doc. No. 79-2 at PageID 2548-49.) Nevertheless, when MedPro appropriately looks to Ohio law for support, particularly with respect to Gronbeck, MedPro contends that coverage is out of step with Ohio public policy, as the State of Ohio does not endorse insurance coverage for the performance of intentional torts like sexual assault. (Doc. No. 79-2 at PageID 2559-60.) Because Gronbeck and Yellow Springs are being sued by the Victim Defendants for Gronbeck's intentional torts, MedPro says that the Policies create no duty to defend either party. (*See id.*)

12

At first blush, an insurer's duty to defend an insured requires some consideration of the insurance policy at issue. *See NCMIC Ins. Co. v. Smith*, 389 F. Supp. 3d 535, 540-41 (S.D. Ohio 2019). "The Supreme Court of Ohio has held 'that an insurance policy is a contract, and that the relationship between the insurer and the insured is purely contractual in nature.'" *NCMIC Ins. Co.*, 389 F. Supp. 3d at 540 (quoting *Nationwide Mut. Ins. Co. v. Marsh*, 472 N.E.2d 1061, 1062 (Ohio 1984)). Insurance agreements are to be construed "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988) (citing *Dealers Dairy Prods. Co. v. Royal Ins. Co.*, 164 N.E.2d 745, 747 (Ohio 1960)) (internal quotation marks omitted). "[W]here provisions of a contract of insurance are reasonably susceptible to more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King*, 519 N.E.2d at 1383 (citing *Faruque v. Provident Life & Acc. Ins. Co.*, 508 N.E.2d 949, 949-50 (Ohio 1987); *Thompson v. Preferred Risk Mut. Ins. Co.*, 513 N.E.2d 733, 736 (Ohio 1987) (collecting cases)).

In conjunction with policy language, courts are to discern whether a particular duty to defend exists by observing "the scope of the allegations in the complaint against the insured." *Cincinnati Ins. Co v. Anders*, 789 N.E.2d 1094, 1097 (Ohio 2003) (citing generally *Motorists Mut. Ins. Co. v. Trainor*, 294 N.E.2d 874 (Ohio 1973)). "'The duty attaches whenever the complaint states a covered claim, or *potentially or arguably* does so.'" *NCMIC Ins. Co.*, 389 F. Supp. 3d at 540 (quoting *M/G Transport Servs., Inc. v. Water Quality Ins. Syndicate*, 234 F.3d 874, 977 (6th Cir. 2000)) (emphasis in original) (cleaned up). "[O]nce a court determines the insurer must defend one claim within a complaint, 'it must defend the entire lawsuit, even though other claims may not come within the coverage of the policy.'" *NCMIC Ins. Co.*, 389 F. Supp. 3d at 540

13

(quoting *Holloway Sportswear, Inc. v. Transportation Ins. Co.*, 177 F. Supp. 2d 764, 769 (S.D. Ohio 2001)).  Conversely, "[a]n insurer need not defend any action or any claims within the complaint when all the claims are clearly and indisputably outside the contracted policy coverage." *Davis & Meyer Law, Ltd. v. ProNational Ins. Co.*, 2007-Ohio-3552, at ¶ 28 (Ohio Ct. App. 2007) (citing *Cardiothoracic & Vascular Surgical Specialists, Inc. v. Travelers Indem. Co.*, 2006-Ohio-6947, at ¶ 21 (Ohio Ct. App. 2006)).

### A.  Gronbeck – Motion for Judgment on the Pleadings

In applying the above-stated principles, the Court finds that MedPro has a duty to defend Gronbeck in the Victim Defendants' underlying state court actions.  To aid in the explanation of this decision, the Court contrasts the instant case with that of *Dibeneditto v. Medical Protective Co.*, 3 F. App'x. 483 (6th Cir. 2001).  There, the Sixth Circuit, applying analogous Kentucky law, found that MedPro did not have a duty to defend Dibeneditto against claims of sexual impropriety made by the plaintiff's former employees, under a professional services insurance policy that was largely, if not completely, identical to the Policies at bar.  *Id.*  The Sixth Circuit held that, even though Dibeneditto's policy contained the same provision stating that MedPro would defend but would not pay damages for claims arising from sexual torts, the sexual harassment at issue simply "did not relate to the rendering of professional services …," because the former employees' claims were "based solely on acts relating to their employment."  *Id.* at 487.

Here though, looking to the Victim Defendants' complaints, the Victim Defendants do not claim that Gronbeck assaulted them apropos of nothing, but within the context of medical examinations and often in the course of regular treatment.  In this way, the Victim Defendants are arguably complaining that instead of receiving professional services which should have been rendered, they suffered sexual assaults.

To be sure, finding otherwise would effectively nullify the "BUT WILL DEFEND" language contained in the Gronbeck Policy. While the exclusion housing that language may not confer any rights upon Gronbeck unto itself, it certainly implies that one has been established elsewhere in the Gronbeck Policy for allegations of sexual assault. Construing the Gronbeck Policy in Gronbeck's favor, the Court is compelled to lean into the implication. In total, it would seem that MedPro sold monster insurance when it issued the Gronbeck Policy. The company cannot now be incredulous at what has scurried out from under the bed. MedPro agreed to defend Gronbeck if he faced a sexual assault claim that arguably fell within the Gronbeck Policy's coverage and the Victim Defendants have made such claims.

Thus, MedPro must defend Gronbeck in state court against the Victim Defendants.

### B.  Yellow Springs – Motion for Default Judgment

Despite Yellow Springs' default, the Court is likewise unconvinced that MedPro is entitled to a declaration regarding its duty to defend Yellow Springs on the merits. Where a tortfeasor's employer, like Yellow Springs to Gronbeck here, was negligent with respect to the subordinate's torts, "permitting coverage … does not subsidize the episodes of … abuse of which its victims complain, at the ultimate expense of other insureds …." *Doe v. Shaffer*, 738 N.E.2d 1243, 1248 (Ohio 2000) (quoting *Gearing*, 665 N.E.2d at 1119) (internal quotation marks omitted) (cleaned up).

As stated above, the Yellow Springs Policy provides Yellow Springs coverage for claims arising from professional medical services which should have been rendered. To this end, the Victim Defendants' underlying complaints all allege that Gronbeck assaulted them when they went to Yellow Springs for medical care. Moreover, the Victim Defendants claim that Yellow Springs was negligent in providing for Gronbeck's supervision; a negligence which proximately caused

15

their injuries at Gronbeck's hand. To the extent the Victim Defendants take issue with Yellow Springs then, they are complaining of not only the sexual assaults they suffered, but of the medical services they did not receive, and which *should have been rendered*, as covered under the Yellow Springs Policy. Therefore, MedPro has a duty to defend Yellow Springs in the Victim Defendants' state court actions.

## 2. **Duty to Indemnify**

The Court next considers MedPro's duty to indemnify Gronbeck and Yellow Springs. "The duty to indemnify is triggered by the insured's actual legal liability." *Twin Maples Veterinary Hosp. v. Cincinnati Ins. Co.*, 824 N.E.2d 1027, 1030 (Ohio Ct. App. 2005) (citation and internal quotation marks omitted). Further, as relevant to the present case, the Ohio Supreme Court "has long recognized that Ohio public policy generally prohibits obtaining insurance to cover damages caused by intentional torts." *Gearing v. Nationwide Ins. Co.*, 665 N.E.2d 1115, 1118 (Ohio 1996) (collecting cases).

For Gronbeck, this means that he cannot be entitled to indemnification if he is ultimately found liable for perpetrating intentional torts like sexual assault on the Victim Defendants. Yet, the Court recalls that the Victim Defendants have raised substantive claims of negligence against Gronbeck. Whether those theories succeed is a matter for the state court and any amount of damages attributable to those theories is a matter for a properly empaneled jury in the Greene County Court of Common Pleas. Ultimately, this Court only finds that MedPro must indemnify Gronbeck only to the extent he is found liable for unintentional torts.

MedPro must also indemnify Yellow Springs, but the Court's determination to that end is less conditional. The Victim Defendants allege in their underlying complaints that the injuries caused by Yellow Springs are the product of negligence rather than Gronbeck's intentional acts

16

and, if Yellow Springs is found liable under such theories in state court, it will be for that negligence.

To state otherwise would be to impute Gronbeck's intent onto Yellow Springs. Construing the Policies in favor of Yellow Springs, the Court does not think the Yellow Springs Policy can be interpreted to shift intent between parties in this way. Doing so would obviate the need for separate insurance agreements altogether. Gronbeck and Yellow Springs could just be listed on the same policy. Precluding coverage for Yellow Springs in this case would also not further any policy goals, but "would risk preventing the victim[s] from obtaining a fair and adequate recovery, in contravention of the purpose of modern tort law." *Doe*, 738 N.E.2d at 1248 (citation omitted). Hence, MedPro must indemnify Yellow Springs in the Victim Defendants' underlying state court actions, specifically for Victim Defendants' theories of negligence, should those theories prove successful.

## IV.    CONCLUSION

In accordance with the foregoing, the Court hereby **GRANTS**, **IN PART**, and **DENIES**, **IN PART**, MedPro's Motion for Judgment on the Pleadings as to Donald Alexander Gronbeck (Doc. No. 79), and **DENIES** MedPro's Motion for Default Judgment as to all Defaulting Defendants (Doc. No. 75). The Court, therefore, **DECLARES** the following:

1. MedPro must defend Gronbeck in the Victim Defendants' state court actions—to wit the: Hobbs Action, the Brewington Action, and the Everage Action;

2. MedPro must indemnify Gronbeck in the Victim Defendants' state court actions—to wit the: Hobbs Action, the Brewington Action, and the Everage Action—but only insofar as Gronbeck is found liable for unintentional torts, if at all. Otherwise, MedPro has no duty to indemnify Gronbeck for his alleged intentional torts;

17

3. MedPro must defend Yellow Springs in the Victim Defendants' underlying state court actions—to wit the: Hobbs Action, the Brewington Action, and the Everage Action;

4. MedPro must indemnify Yellow Springs in the Victim Defendants' underlying state court actions—to wit the: Hobbs Action, the Brewington Action, and the Everage Action; and,

5. The Clerk is **DIRECTED** to **ENTER ITS JUDGMENT** to reflect the findings herein.  However, this Order is **NOT DISPOSITIVE** of the entire case, as MedPro has alleged six additional causes of action which were not addressed by the Motions and not decided above.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, June 22, 2026.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE